[No. 36668.   Department Two.   September 5, 1963.]

ROCKY MOUNTAIN FIRE & CASUALTY COMPANY, *Appellant*,
v. RALPH M. ROSE *et al.*, *Respondents.**

*Regal & McDonell*, by *John Patrick Cook*, for appellant.

*Whitmore, Vinton, Powers & Manion, Robert B. Johnson*, and *Brightman & Holm*, for respondents.

*Reported in 385 P. (2d) 45.

RYAN, J.[†]—The appellant, Rocky Mountain Fire & Casualty Company, brought this action for a declaratory judgment to determine its liability or duty under a policy of automobile insurance which had been issued to the respondent, Ralph M. Rose, by its predecessor, the Mayflower Insurance Exchange.

The trial court found that in 1958 respondent Ralph M. Rose consulted one Ronald Smith, an insurance agent for appellant's predecessor company, with offices in Snoqualmie, Washington. As a result of this conference, a policy of automobile insurance upon a 1956 Plymouth automobile, then owned by Mr. Rose, was issued by the company.

On or about September 19, 1959, the respondent Clara Harden, then Clara Rose, daughter of Ralph M. Rose, who was 17 years old, employed full time, and residing in her parents' home, purchased a new 1959 Plymouth automobile on installment contract. Title to this car was taken in the name of Ralph M. Rose, for the purpose of obtaining financing of the balance of the purchase price. On the same day that the car was purchased, Mr. Rose and Clara went to the office of Mr. Smith and advised him of the purchase of this new automobile, and requested insurance coverage on it. The court made finding of fact No. 6, to which the appellant assigns error. It recites the following:

"That after full disclosure of the facts of the purchase of said automobile to said Ronald Smith, said agent of the plaintiff's predecessor advised defendant Ralph M. Rose and his daughter that said 1959 Plymouth automobile should be added to the existing policy of Ralph M. Rose, which decision was that of said Ronald Smith, and coverage upon said automobile was then entered with the defendant Ralph M. Rose as the only named insured thereon. Clara Rose was listed as a 60% driver of the said car on the policy. EH"

Some months later, Clara decided that she could not meet the payments on her car, because of her anticipated marriage to William Harden. Consequently, an agreement was made between her and Mr. Rose, whereby she traded her

---

[†]Judge Ryan is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

equity in the 1959 Plymouth for a 1953 Ford automobile, title to which was in her father's name and which was listed under the same policy of insurance. The court further found that Mr. Rose informed Mr. Smith of the trade of the two cars and was advised by him that this would make no difference and that no change was necessary in the policy of insurance.

William Harden and Clara Rose were married on October 17, 1960 and established their own residence a short distance from that of her parents in the city of Snoqualmie, taking the 1953 Ford automobile with them. Although there was testimony that the agent had been informed of Clara's marriage, the court found that neither the appellant nor the agent had been so advised.

On November 30, 1960, William Harden, while driving the 1953 Ford automobile, with the knowledge and consent of his wife, Clara Rose Harden, and with the knowledge of Ralph M. Rose, was involved in an accident resulting in injuries to some of the respondents, other than the Roses and the Hardens. The court found that within 2 or 3 days after the accident, the appellant was advised by Mr. Rose and Mr. Harden of the accident and the claim of coverage under the policy. Testimony was introduced that the agent then told them, in effect, that they were covered by the policy. The trial judge, in his oral decision, referred to this acknowledgment by the agent as having been undenied.

The trial court entered a declaratory judgment decreeing that the policy of insurance be reformed to add the name of Clara Rose Harden as an additional named insured, and as so reformed, that it be interpreted and construed to include William Harden, as an additional insured, by reason of his operation of the automobile at the time of the accident, with the permission of a named insured under the policy. The court further awarded the respondents, Rose and Harden, attorneys' fees in the sum of $750.

Appellant's first assignment of error is directed to finding of fact No. 6, which is set forth above. A careful examination of the record discloses that this finding is amply supported by the evidence. The testimony of both parties was

to the effect that the father and daughter approached Mr. Smith, the agent, explaining that *they* wanted liability and medical coverage on the 1959 Plymouth. They further disclosed all of the facts relative to ownership of the car. It was only natural that as laymen, uninitiated in the intricacies of insurance contracts, they relied entirely upon the agent to give them the coverage they requested, which was that they both be named as insureds.

The trial court found that the agent, Mr. Smith, determined how the policy should be written, and that it was he who caused Mr. Rose, alone, to be named as the insured.

" . . . We have stated many times that where the findings of fact and the judgment of the trial court are supported by the record, this court will not disturb them. *Cuillier v. Coffin*, 57 Wn. (2d) 624, 628, 358 P. (2d) 958 (1961): *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn. (2d) 570, 343 P. (2d) 183 (1959); *Wise v. Farden*, 53 Wn. (2d) 162, 332 P. (2d) 454 (1958)." *Port of Seattle v. Blatz*, 59 Wn. (2d) 55, 57, 365 P. (2d) 779 (1961).

See, also, *Delegan v. White*, 59 Wn. (2d) 510, 368 P. (2d) 682 (1962).

Appellant's second and fourth assignments of error pertain to the court's finding and conclusion that the respondents Rose and Harden were entitled to judgment against the appellant in the sum of $750 for attorneys' fees. The Uniform Declaratory Judgments Act provides in part as follows:

"In any proceeding under this chapter, the court may make such award of costs as may seem equitable and just." RCW 7.24.100.

█ In *Chapin v. Collard*, 29 Wn. (2d) 788, 795, 189 P. (2d) 642 (1948), which was an action under the declaratory judgments act, this court said, in reference to the section of the act above quoted:

"We have repeatedly held that 'costs' do not include attorneys' fees (other than statutory) or accountants' fees. In *Fiorito v. Goerig*, 27 Wn. (2d) 615, 179 P. (2d) 316, we said:

" 'The term "costs" is synonymous with the term "expense." Costs are allowances to a party for the expense incurred in prosecuting or defending a suit, and the word

"costs," in the absence of statute or agreement, does not include counsel fees; in other words, counsel fees are not costs or recoverable expenses incurred in prosecuting or defending a suit, either in suits in equity or actions at law.

" 'We have consistently followed the general rule concerning allowances of attorneys' fees and other items of expense in preparation of trial, such as accountants' fees, that such allowances will be allowed only in case of agreement between the parties or by virtue of specific authority. *State ex rel. Macri v. Bremerton*, 8 Wn. (2d) 93, 111 P. (2d) 612.' "

See, also, *Schoenwald v. Diamond K Packing Co.*, 192 Wash. 409, 421, 73 P. (2d) 748 (1937), and *Beadle v. Barta*, 13 Wn. (2d) 67, 74, 123 P. (2d) 761 (1942).

In another case brought under the declaratory judgments act, *Seattle First Nat. Bank v. Crosby*, 42 Wn. (2d) 234, 254 P. (2d) 732 (1953), we held that the trial court did not err in denying appellants a reasonable attorneys' fee, but that they were entitled to their statutory costs, citing *Chapin v. Collard*, *supra*. We must, therefore, conclude that the court is without power to award attorneys' fees, other than statutory fees, under the provisions of the declaratory judgments act. Since such fees are not authorized by statute in the instant case, the only remaining question in this respect, then, is whether or not such fees can be based upon the contract of the parties.

The respondents urge that a reasonable attorneys' fee should be allowed because of the appellant's contractual obligation to defend the insured. The insurance policy with which we are here concerned provided in part as follows:

"II. Defense, Settlement, Supplementary Payments: With respect to such insurance as is afforded by this policy for coverages A, D and E, the Exchange shall:

" (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Exchange may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;"

In support of their contention that they are entitled to judgment against the appellant for a reasonable attor-

neys' fee, by virtue of the above provision, the respondents cite several authorities which are not in point in the instant case. These cases are distinguishable in that they are based upon the insurer's refusal to defend actions instituted against the insureds. There is no showing in the record before us that the appellant has refused to defend an action against any of the respondents, but only that, by the present action, it is seeking to determine the rights and obligations between the parties. Although no Washington case directly in point has been cited to us, other jurisdictions, when confronted with the same question, have supported the right of an insurer to maintain an action for a declaratory judgment under circumstances comparable to those in the instant case, without subjecting itself to liability for the opposing party's attorneys' fees.

In the case of *Maryland Cas. Co. v. Sammons*, 63 Ga. App. 323, 327, 11 S. E. (2d) 89 (1940), the court was faced with the same issue as the instant one. It determined that the insurance company was not liable for attorney's fees unless it had acted in bad faith, fraudulently or had been stubbornly litigious, stating:

" . . . Every person, natural or artificial, has a right to have his rights under a contract adjudicated, subject to the rule just stated, whether the issues are made affirmatively or defensively, without paying the attorney's fees of the opposite party in such a suit. . . ."

In the case of *Carter v. Virginia Surety Co.*, 187 Tenn. 595, 216 S. W. (2d) 324 (1948), the court said:

" 'The suit which occasioned complainant's damage was the defendant's effort to obtain a declaration that, on the facts, it owed him no duty. To hold that such a suit may not be brought without liability for damage in event of failure to prevail, even though in good faith, would go far, and place a penalty on the insurer's access to adjudication of rights not common to other contracting parties or to litigants generally. No case has been cited in support of the proposition. Public policy might lead the legislature to place this extra duty on an insurer, assuming its power present, but a Court must find sound legal principle, or at least precedent, and neither is here shown or has been discovered.' "

See, also, *Standard Surety & Cas. Co. of New York v. Perrin*, 19 So. (2d) 783, (La. App. 1944), and *O'Morrow v. Borad*, 27 Cal. (2d) 794, 167 P. (2d) 483, 163 A.L.R. 894 (1946).

It is our opinion that the court was in error in granting attorneys' fees to the respondents, and this portion of the judgment is reversed, but without prejudice to an allowance of reasonable attorneys' fees in any further action under proper circumstances, and in conformity with the views herein expressed.

The appellant's third assignment of error is that the court erred in concluding that the contract of insurance should be reformed to conform with the objects and purposes for which it was purchased, and that, by such reformation, Clara Rose should be added as a named insured, thereby maintaining the policy in full force and effect and extending its coverage to protect Clara and the estate of her deceased husband against any claims of the other respondents.

▓ In the case of *Carew, Shaw & Bernasconi, Inc. v. General Cas. Co. of America*, 189 Wash. 329, 336, 65 P. (2d) 689 (1937), we stated:

"The rules of law governing the reformation of written agreements are applicable to the reformation of an insurance policy. An insurance contract is no different from any other contract, when the rules of law governing the reformation of written agreements are to be applied to it. *Bjorklund v. Continental Casualty Co.*, 161 Wash. 340, 297 Pac. 155. . . ."

To support a reformation of contract, there must be a showing of either fraud or mutual mistake. There is no suggestion of fraud in the instant case, so it must be conceded that the only ground for reformation is that of mutual mistake. In the case of *Tenco, Inc. v. Manning*, 59 Wn. (2d) 479, 483, 368 P. (2d) 372 (1962), we stated:

" . . . If the intention of the parties is identical at the time of the transaction, and the written agreement does not express that intention, then a mutual mistake has occurred. *Bergstrom v. Olson* (1951), 39 Wn. (2d) 536, 236

P. (2d) 1052; *Keesling v. Pehling* (1950), 35 Wn. (2d) 624, 214 P. (2d) 506."

██ The trial court found that it was the intention of the agent and of Mr. Rose and his daughter that the policy would cover and protect both the father and daughter, the same as if they were named insureds. That this is what the agent had in mind is clearly demonstrated by the fact that when the accident was reported to him, he assured Mr. Rose and Mr. Harden that they were protected by the policy as written. When Mr. Rose and his daughter traded the two cars, they were again advised by the agent that they were both protected by the policy, the agent then being fully aware of the fact that the 1953 Ford was Clara's property. Later, by letter dated February 10, 1961, the appellant advised Mr. Rose that it was cancelling the coverage on the 1953 Ford, effective March 1, 1960, for the reason that it had then learned of the trade of the car, and that by that exchange the interest and equity of Mr. Rose were entirely transferred to Clara, so that he was no longer entitled to insure the vehicle as owner. The position then taken by the company was a direct contradiction of the agent's representation to Mr. Rose and Clara. It is the established rule of law that the knowledge which an agent acquires while acting as such and within the scope of his authority is imputed to his principal and that an insurance company is bound by the acts, contracts, or representations of its agent, which are within the scope of his apparent authority. *American Fidelity & Cas. Co. v. Backstrom*, 47 Wn. (2d) 77, 287 P. (2d) 124 (1955); *Fanning v. Guardian Life Ins. Co. of America*, 59 Wn. (2d) 101, 366 P. (2d) 207 (1961).

In the case of *Gaskill v. Northern Assur. Co.*, 73 Wash. 668, 674, 132 Pac. 643 (1913), this court said:

" . . . The principal, rather than the person with whom he deals through an agent, should be held accountable for mistake of the agent committed in the course of the very transaction entrusted to his performance. There is no sound principle, either of law or equity, upon which the insured may be punished for the mistakes of the insur-

er's agent, so as to relieve the insurer from the liability which he meant to undertake and for which he was paid.
. . ."

Although an exhaustive search has been made, we are unable to find any prior Washington case directly in point. The case of *Miller v. United Pac. Cas. Ins. Co.*, 187 Wash. 629, 60 P. (2d) 714 (1936), wherein reformation was decreed, appears to be very similar in many respects, and yet it is not identical on its facts. Other cases in which we have approved reformation of insurance policies in order to conform them to the intention of the parties are *Robbins v. Milwaukee Mechanics' Ins. Co.*, 102 Wash. 539, 173 Pac. 634 (1918); and *Gaskill v. Northern Assur. Co.*, *supra*.

The case of *Doyle v. Allstate Ins. Co.*, 4 Wis. (2d) 411, 90 N. W. (2d) 562 (1958), is almost identical with the instant case. The court there held that a policy of insurance should be reformed where the son purchased a car, but the father co-signed the conditional sale contract and the title to the car was placed in both names, although the son was the sole owner. The insurance agent was told that the son wanted insurance on his car and all facts were disclosed to him. The agent placed the insurance in the name of the father, only. Later the son traded this car for another one, following which he had an accident. Both the accident and exchange of automobiles were reported to the insurer which extended the coverage to the second car. The insurance company disclaimed responsibility, however, on the grounds that it had no knowledge that the son was the owner.

The court held that the agent's knowledge was that of the insurer, that the policy should be reformed to show the son as the owner of the second car at the time of the accident, although the agent had merely insured the son's first car as a second car under a policy already issued to the father.

See, also, *Beach v. United States Fidelity & Guaranty Co.*, 205 Cal. App. (2d) 409, 23 Cal. Rptr. 73 (1962), and *General Ins. Co. of America v. Western Fire & Cas. Co.*, 241 F. (2d) 289 (1957). These two cases are very similar

on their facts to the instant case, and in each of them the court decreed that an insurance policy issued to a parent should be reformed to add a child as a named insured.

It is our conclusion that the policy of insurance issued by appellant's predecessor should be reformed as decreed by the trial court, and in this respect the judgment is affirmed. That portion of the judgment awarding attorneys' fees to the respondents is reversed. Respondents, having substantially prevailed upon this appeal, shall recover their costs.

OTT, C. J., DONWORTH, FINLEY, and HAMILTON, JJ., concur.

---

October 3, 1963. Petition for rehearing denied.