[No. 37557. Department Two. September 16, 1965.]

MITCHELL F. MILLER et al., *Appellants*, v. ALLSTATE INSURANCE COMPANY, *Respondent.*\*

\*Reported in 405 P.2d 712.

*James A. Fish* and *Dullanty & Fish*, for appellants.

*Eugene I. Annis* and *Reiley & Annis*, for respondent.

RYAN, J.†—The plaintiffs brought this action to secure a judgment declaring that a bodily injury liability insurance policy issued to them by the defendant be interpreted to provide primary insurance coverage or in the alternative excess coverage for damages over and above any other insurance available to them.

The plaintiff Mary Miller was seriously injured in an accident which occurred July 28, 1962. At that time, she was a passenger in an automobile owned by her brother, Elmer Anderson, and being then driven by her son. The accident was a head-on collision with an automobile driven by an uninsured operator. It appears from the statements of counsel for the plaintiffs that the uninsured driver of the other automobile was at fault and is liable, although an action against him for damages has not yet been tried and is still pending. The plaintiffs allege damages in a total amount not to exceed $32,000.

The policy of insurance issued to the plaintiffs by the defendant, Allstate Insurance Company, contains a section entitled "Protection Against Bodily Injury by Uninsured Automobiles" within which is the following:

Exclusions—what this Section does not cover
This Section of the Policy does not apply:
1. to bodily injury of an insured sustained while in or upon, entering into or alighting from, any automobile, other than an owned automobile, if the owner has insurance similar to that afforded by this Section and such insurance is available to the insured; . . . .

---

†Judge Ryan is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Mrs. Miller's brother also carried insurance against injury by uninsured automobiles, the policy having been written by Farmers Insurance Exchange. This policy provides:

> Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the Company shall not be liable for a greater proportion of any loss to which this Uninsured Motorists Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance.

The limit of liability on each policy was $10,000. The premium charge for the Allstate uninsured motorist coverage was $4.50 and for the Farmers was $4. Farmers has paid the plaintiffs $10,000 and they are now attempting to compel the defendant to pay them an additional sum in the same amount. Allstate has denied this claim, contending that it is not liable because of the exclusion in its policy relating to injuries caused by an uninsured automobile where the insured is riding in a nonowned automobile and there is other similar coverage available.

This case was submitted to the trial court on a stipulated statement of facts and, following argument of counsel, the court dismissed plaintiffs' complaint, from which they now appeal.

The provision above cited in the Allstate policy is generally referred to as an "escape" clause and the portion of the Farmers policy quoted is commonly designated as a "pro rata" clause.

We are here confronted with the question of whether the pro rata clause provides insurance similar to that furnished by the defendant or whether it conflicts with and is so repugnant to the escape clause that the latter is nullified and the defendant held liable to the full extent of its coverage.

This is the first case we have been called upon to decide, involving the precise issues here presented. A careful re-

view of all authorities and decisions cited by counsel, together with others we have discovered, conclusively establishes that this case falls within an area of law which is nebulous, unsettled and devoid of uniformity or agreement. This is quite understandable when we consider the comparative newness of extensive automobile ownership and use, the frightening increase in traffic accidents and injuries, the great and growing number of casualty insurance companies and the multiple forms of coverage they offer to prospective purchasers.

In a case involving two insurance companies, both of which had "other insurance" provisions in their policies, the court, in *Oregon Auto. Ins. Co. v. United States Fid. & Guar. Co.*, 195 F.2d 958 (1952), referring to cases in other jurisdictions, said, "These decisions point in all directions. . . . In sum, the cases are irreconcilable in respect both of approach and result."

The instant case may be termed unique in that, unlike the vast majority of other cases cited, it presents a contest between an insured and one of two insurers. The other insurer has paid in full and is not demanding any reimbursement or contribution. Most of the cases cited from other jurisdictions involve disputes between insurers to determine their respective liability to a common insured. We must conclude that the basic question before us is that of interpretation of the insurance contract between the parties to this action. In seeking the solution of this problem, we should constantly keep in mind that any like case must be carefully analyzed regarding its particular facts and circumstances and compared or distinguished accordingly.

In a very recent case decided by this court, *Safeco Ins. Co. of America, Inc., v. Pacific Indem. Co., ante* p. 38, 401 P.2d 205 (1965), we held that, as between two insurers, the defendant was liable for all loss sustained by the insured because it had the primary liability under the provisions of the two policies. The plaintiff's policy issued to the driver contained an "excess" clause and the defendant's policy, insuring the owner, included a "pro rata"

clause. We held that an excess clause does not necessarily conflict with a pro rata clause and may be given effect without invalidating the pro rata contribution clause in the other policy. Although this case may be clearly distinguished from the present case because of the many factual differences, it would seem to give some measure of support to the decision of the trial court.

The plaintiffs urge that Allstate should be held liable to pay them $10,000 in addition to the same sum already paid by Farmers for the reason that the latter's policy is not "insurance similar to that afforded" by the Allstate policy. We can not agree with this contention, but believe that the policies are similar.

Webster's New Twentieth Century Dictionary defines "similar" in these words: "like; resembling; having a general resemblance but not exactly the same."

"Similar" is not synonymous with "identical." All that could possibly be required by the use of this word is a general resemblance in the essential elements and this is present in the two policies with which we are concerned. Both policies provide the same amount of insurance to the same beneficiaries for the same injuries caused by the same type of automobiles. Consequently, the only reasonable interpretation of the insurance contract between the plaintiffs and the defendant results in the conclusion that Allstate is exempted from liability by the terms of the policy by which both parties are bound.

In *Hamilton Trucking Serv. v. Automobile Ins. Co. of Hartford, Conn.*, 39 Wn.2d 688, 237 P.2d 781 (1951), we pointed out that a rule of construction should not be allowed to make a plain agreement ambiguous and then construe it in favor of the insured. We stated that the words of a policy must be given their ordinary meaning.

In the case of *Rew v. Beneficial Standard Life Ins. Co.*, 41 Wn.2d 577, 581, 250 P.2d 956, 35 A.L.R. 891 (1952), we said:

> In the absence of evidence to the contrary, the parties to a contract of insurance will be presumed to have intended the words and terms of the contract as they are

ordinarily understood by the average man. *Kane v. Order of United Commercial Travelers of America,* 3 Wn. (2d) 355, 100 P. (2d) 1036.

It would seem that what we have said above should be sufficient to dispose of the issue in this case, but there is much additional support for the position we have taken.

The plaintiffs urge that the weight of authority supports their position, relying principally upon cases decided by courts in Oregon and California. They cite *Oregon Auto. Ins. Co. v. United States Fid. & Guar. Co., supra; American Auto. Ins. Co. v. Seaboard Sur. Co.,* 155 Cal. App. 2d 192, 318 P.2d 84 (1957); *Firemen's Ins. Co. of Newark, N. J. v. Continental Cas. Co.,* 170 Cal. App. 2d 698, 339 P.2d 602 (1959); *Air Transport Mfg. Co. v. Employers' Liab. Assur. Corp.,* 91 Cal. App. 2d 129, 204 P.2d 647 (1949); and *Lamb-Weston Inc. v. Oregon Auto. Ins. Co.,* 219 Ore. 110, 341 P.2d 110, 346 P.2d 643, 76 A.L.R.2d 485 (1959).

However, an examination of these and other cases referred to by the plaintiffs, immediately indicates that they must be distinguished from the case now before this court for a number of reasons. They involve issues between insurance companies regarding their respective contributions and are concerned with liability policies, not uninsured motorist coverage. But even if we were to assume, arguendo, that these cases are applicable, their reasoning has been rejected by the courts of other jurisdictions, whose opinions we find more compelling.

In the case of *Citizens Mut. Auto. Ins. Co. v. Liberty Mut. Ins. Co.,* 273 F.2d 189, 193 (1959), the court referred to the *Oregon Auto. Ins. Co., supra,* and the *Lamb-Weston, Inc., supra,* cases as representing the minority view. The court said, "It should be noted that since the Oregon decision was handed down three United States Courts of Appeal and four state Supreme Courts have reached a different conclusion."

 Although, as is true with the other cases cited by counsel, there are distinguishing features present, the case of *Burcham v. Farmers Ins. Exch.,* 255 Iowa 69, 75, 121 N.W.

2d 500 (1963), lends support to the defendant in the instant case, through the following statement:

> Though the reasoning may be criticized as circular and arbitrary, we believe the better rule is that where the insurance companies would be both liable except for the other, the excess-escape-clause policy should be held to be not other similar insurance to the policy containing the pro rata clause; conversely, the policy with only its pro rata clause applicable is regarded as other similar insurance as used in the excess-escape policy.

See also, *Travelers Indem. Co. of Hartford, Conn. v. Wells,* 316 F.2d 770 (1963).

The rule which we believe applicable to the instant case is stated in 7 Am.Jur.2d *Automobile Insurance* § 202, p. 545, as follows:

> [W]here one of the policies contains a "pro rata" clause and the other a "no liability" clause—it has been suggested that the "no liability" clause should be given effect on the ground that the "pro rata" clause is other insurance so as to effectuate the "no liability" clause, while the "no liability" clause was not other insurance so as to effectuate the "pro rata" clause.

The judgment is affirmed.

ROSELLINI, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.