[No. 37471.  Department Two.  October 14, 1965.]

V. VAN DYKE TRUCKING, INC., *Respondent,* v. "THE SEVEN PROVINCES" INSURANCE, LTD., OF THE HAGUE, HOLLAND, *Appellant.*\*

\*Reported in 406 P.2d 584.

*Karr, Tuttle, Campbell, Koch & Granberg* and *F. Lee Campbell,* for appellant.

*John Ranquet,* for respondent.

FINLEY, J.—The fact pattern in this case is remindful of the intricacies of a jigsaw puzzle designed to be put together only by advanced devotees. The puzzle lies not alone in the intricacies of the over-all pattern, but in the parts thereof and their interrelationships, if any. This very well may call for close reading and rechecking on the part of the reader respecting the idiosyncrasies of this matter as described in the following opinion.

The legal dispute herein, and in two other lawsuits in the series, arises out of a collision between a tractor-trailer combination and a passenger car. The tractor was owned by V. Van Dyke Trucking, Inc. (hereinafter referred to as Van Dyke Trucking), and Van Dyke Trucking is the plaintiff-respondent in this suit. The passenger car was driven by James Depew, who was killed in the collision. The administratrix of his estate has at least a stand-by role in this segment of the several suits arising out of the collision.

Van Dyke Trucking had liability insurance from two different companies. Primary coverage of $10,000 was supplied by Newfoundland American Insurance Co., and *excess coverage* (and these are indeed key words) of $40,000 was written by "The Seven Provinces" Insurance, Ltd. (hereinafter referred to as "Seven Provinces"), the defendant-appellant in this suit.

In the initial lawsuit the administratrix of the Depew estate brought an action against Van Dyke Trucking, and, on the first day of trial, a settlement for $75,812.72 was reached by the parties. A judgment agreed upon by the parties was entered. It reflected the settlement as follows:

Newfoundland Insurance to pay $10,812.72 (the item of $812.72 covered property damage to the Depew car); "Seven Provinces" to pay $40,000; and Van Dyke Trucking to pay the balance of $25,000.

Now, however, a somewhat complicating, perhaps even kaleidoscopic, change occurs and must be added or super-imposed upon the initial picture. The Van Dyke Trucking tractor cab was attached to and was pulling a motor-freight trailer belonging to Canadian American Trucking, Inc. (hereinafter referred to as Canadian American). Canadian American carried liability insurance with Carolina Casualty Insurance Co., with limits of $100,000.

After the settlement of the first lawsuit referred to above, and with the active participation of Van Dyke Trucking, the administratrix initiated the second lawsuit, a garnish-ment action, in which Van Dyke Trucking was apparently the principal defendant and Carolina Casualty was the garnishee defendant. In that action the Pierce County Superior Court entered judgment against Carolina Casualty. The trial judge noted that a Mr. V. Van Dyke was the moving force in both transportation firms; i.e., Van Dyke Trucking and Canadian American. The trial judge made a finding that a Mr. Johnson, the driver of the cab, although normally an employee of Van Dyke Trucking, was in fact an employee of Canadian American respecting that portion of the trip involved at the time the accident occurred. The trial judge thus further found that the driver was acting within the scope of his employment with Canadian Ameri-can at the time of the accident. As a consequence, Carolina Casualty was held to be obligated to pay the amounts Van Dyke Trucking had become obligated to pay to the Depew estate. The trial judge entered judgment in the second lawsuit against Carolina Casualty for $25,000 (the amount of the judgment in the first lawsuit for which Van Dyke was liable under the settlement agreement entered therein), with an additional $4,000 for attorney fees.

Carolina Casualty commenced an appeal of this latter judgment. However, Van Dyke Trucking settled with Carolina Casualty for $21,250. The brief for the respondent

Van Dyke Trucking notes that there was considerable doubt as to whether the judgment for attorney fees would have been upheld on appeal in light of the decision in *Rocky Mountain Fire & Cas. Co. v. Rose*, 62 Wn.2d 896, 385 P.2d 45 (1963). The settlement of $21,250 was distributed in the following manner: $14,792.68 was paid over to the Depew estate, and $6,457.32 was allocated for attorney fees. At this point the balance of the judgment for which Van Dyke Trucking was obligated amounted to $10,207.32.

"Seven Provinces" had been aware of the garnishment proceedings, and, apparently, had watched the developments with considerable interest. After Carolina Casualty settled with Depew and Van Dyke Trucking, "Seven Provinces" asserted a claim against Carolina Casualty respecting the $40,000 for which "Seven Provinces" had obligated itself in the original settlement with the Depew estate. Carolina Casualty then made an out-of-court settlement of the $40,000 claim of "Seven Provinces" for $21,500. This payment to "Seven Provinces" is the fulcrum of this third lawsuit and the present appeal.

Simply stated, Van Dyke Trucking argues that the $40,000 coverage of "Seven Provinces" was excess insurance, and the limits of same are computed only after all other insurance has been matched to the insured's liability. Thus, Van Dyke Trucking, in effect, wants "Seven Provinces" to add its settlement or recovery of $21,500 from Carolina Casualty to the fund in sufficient amount to cover Van Dyke Trucking's unindemnified liability of the Depew estate.

The issues in the third lawsuit were put to the trial judge in a motion for summary judgment based on the exhibits and affidavits in the file of the case. The trial court decided in favor of Van Dyke Trucking. We affirm that decision. The reasoning we adopt in reaching this result is as follows:

The policy issued by "Seven Provinces" reads:

> This insurance, subject to the terms, conditions, limitations and exclusions hereinafter mentioned, is to indemnify the Assured for any and all sums which the Assured shall by law become liable to pay and shall pay or by

final judgment be adjudged to pay to any person or persons . . . as damages

(a) for bodily injuries, including death at any time resulting therefrom, caused by accident, . . . .

PROVIDED ALWAYS THAT it is expressly agreed that liability shall attach to the Underwriters only after the Primary Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:

(a) BODILY INJURY

$10,000. ultimate net loss in respect of each person

. . . .

and the Underwriters shall then be liable to pay only such additional amounts as will provide the Assured with a total coverage under the policy/ies of the Primary Insurers and this Insurance combined of

(a) BODILY INJURY

$50,000. ultimate net loss in respect of each person

. . . .

The policy also contains express definitions of two key phrases or words:

ULTIMATE NET LOSS.—The words "ultimate net loss" shall be understood to mean the sums paid in settlement of losses for which the Assured is liable *after making deductions for all recoveries, salvages and other insurances* (other than recoveries under the policy/ies of the Primary Insurers), whether recoverable or not, and shall exclude all expenses and "Costs." (Italics ours.)

COSTS.—The word "Costs" shall be understood to mean interest on judgments, investigation, adjustment and legal expenses (excluding, however, all expenses for salaried employees and retained counsel of and all office expenses of the Assured).

Finally, one additional clause of the policy must be considered:

APPLICATION OF SALVAGE.—All salvages, recoveries or payments recovered or received subsequent to a loss settlement under this Insurance shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters, provided always that nothing in this clause shall be construed to mean that

losses under this Insurance are not recoverable until the Assured's ultimate net loss has been finally ascertained.

Neither counsel for appellant nor counsel for respondent has been able to find a comparable case construing the above policy provisions. However, the issue, even though somewhat hidden in complex figures and an overlay of litigation, is relatively simple; *i.e.*, Does the payment of $21,500 by Carolina Casualty to "Seven Provinces" constitute a salvage or recovery of "other insurances" within the meaning of the policy provisions defining "ultimate net loss"? In other words, "Seven Provinces" is arguing that the payment of $21,500 from Carolina Casualty is outside the policy, and that Van Dyke Trucking can claim no rights in it. The contrasting positions of the parties can be portrayed by separate ledger-type presentations. Under one argument, the figures are as follows:

| | | |
|---|---|---|
| (1) The total sum which the Van Dyke Trucking became liable to pay by final judgment | | $75,000.00 |
| (2) Less the amount paid by "Primary Insurers" | | 10,000.00 |
| (3) Balance of final judgment | | $65,000.00 |
| (4) Less deduction for "other insurance": | | |
| (a) amount paid by Carolina Casualty in the settlement action | $21,250.00 | |
| 1. less costs (attorneys' fees) | $6,457.32 | |
| | | $14,792.68 |
| (5) "Ultimate net loss" | | $50,207.32 |
| (6) Policy limits of "Seven Provinces" | | 40,000.00 |
| (7) Remaining liability of Van Dyke Trucking | | $10,207.32 |

However, we reject this computation as it fails to give recognition to the policy provision that expressly states that "all salvages, recoveries or payments recovered or received subsequent to a loss settlement under this insurance shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters, . . . ."

Thus, under this provision, the payment from Carolina Casualty to "Seven Provinces" may not be ignored. The policy issued by "Seven Provinces", by the use of clear and specific language, could have provided that the contingency in this case (any payment or substantial contribution by another insurance company to "Seven Provinces") would redound to the sole benefit of "Seven Provinces". The policy did not do so. The only applicable policy language provides that "*all* salvage, recoveries, or payments recovered . . . shall be applied . . . and all necessary adjustments shall then be made between the assured and the underwriter." This language seems to us all inclusive and dispositive adversely of the claim of "Seven Provinces". If it can be said that there is any ambiguity in this provision, then under standard horn-book law, the ambiguity is to be construed against the drafter of the contracts or policy. Thus, we construct and adopt the following computations under the provisions of the policy:

| | |
|---|---:|
| (1) The total sum which Van Dyke Trucking became liable to pay by the final judgment | $75,000.00 |
| (2) Less the amount paid by "Primary Insurers" | 10,000.00 |
| (3) Balance of final judgment | $65,000.00 |
| (4) Less deduction for "other insurance": | |
|     (a) amount paid by Carolina Casualty in the settlement action .... $21,250.00 | |
|         1. Less costs (attorneys fees) .. 6,457.32 | |
| | $14,792.68 |
|     (b) amount paid by Carolina Casualty to "Seven Provinces" | 21,500.00 |
| | 36,292.68 |
| (5) "Ultimate net loss" | $28,707.32 |
| (6) Policy limits of "Seven Provinces" | 40,000.00 |
| (7) Excess of coverage over "Ultimate net loss": | ($11,292.68) |

These figures clearly show that the difference in results flows from the different amounts included in the total fund that is represented by entries (4) and (6) above. If the salvage between Carolina Casualty and "Seven Provinces" is excluded, as in the first computation set out above, then the Assured must pay the remaining liability to the Depew estate of $10,207.32 plus interest. However, if the salvage from Carolina Casualty to "Seven Provinces" is included in the insurance fund, as in the second computation, then there is an excess of insurance coverage, and the Assured is fully covered. As we have stated above, we read the policy to require that all the "salvages, recoveries or payments recovered or received subsequent to a loss settlement" must be computed to determine the coverage under the excess insurance supplied by "Seven Provinces." Thus, we affirm the trial judge.

■ "Seven Provinces" argues that Van Dyke Trucking actually was fully indemnified when Depew obtained the $29,000 judgment against Carolina Casualty. "Seven Provinces" argues that the $21,250 settlement with Carolina Casualty marks the point at which Van Dyke Trucking took its loss. The final step in the argument is that when Van Dyke Trucking settled with Carolina Casualty "it terminated its right to make further claim against any of the insurers involved." This, of course, does not follow. The settlement was between Carolina Casualty, Canadian American Trucking, Van Dyke Trucking, and the Depew estate. "Seven Provinces" was not a party to the settlement. Thus, it appears to us there is nothing to prevent Van Dyke Trucking from relying on its contract with "Seven Provinces".

■ The final argument of "Seven Provinces" is that the attorney fees in the garnishment action (which resulted in the settlement payment of $21,250) should not be deducted as expenses in computing the "ultimate net loss." The definition of "ultimate net loss" allows an exclusion for all "costs", and "costs" are defined as

interest on judgments, investigation, adjustment and legal expenses (excluding, however, all expenses for salaried employees and retained counsel of and all office expenses of the assured).

"Seven Provinces" contends that the parenthetical language precludes an allowance to Van Dyke Trucking for attorney fees.

The problem is, quite obviously, What does the phrase "legal expenses", as limited by the parenthesis, mean? It is clear that some "legal expenses" of the assured can be deducted in computing the "ultimate net loss" under the policy. It is also clear that the parenthetical clause fails to exclude *all* attorney fees, as it only excludes expenses of "retained counsel". Thus, the question turns on the meaning of "retained counsel".

There is no policy definition of the term "retained counsel", but we can look to the context for the meaning of the phrase. Note that the term "retained counsel" falls in a list of the normal expenses of the Assured; *i.e.*, the normal expenses the Assured would incur in any event to run his business—"expenses for salaried employees and retained counsel of and all office expenses . . . ." Thus, the terms surrounding the phrase "retained counsel" explain its meaning. It is clear that the Assured cannot claim expenses that it would have routinely incurred for legal counsel in its normal business operation. This provision is designed to present a windfall to the Assured. However, when the Assured undertook "legal expenses" to secure "recoveries, salvages and other insurances," then the costs of that unusual operation may be deducted from the "recoveries, salvages and other insurances" to determine the "ultimate net loss" under the policies. This construction gives meaning to both the phrase "legal expenses" and the phrase "retained counsel". Thus, since the attorney fees did not occur in the normal business of the Assured, but were incurred in fact to obtain "other insurance", then they were allowable as "legal expenses" under the "costs" provision of the policy.

The above holding as to attorney fees is in no way inconsistent with our recent case of *Rocky Mountain Fire & Cas. Co. v. Rose, supra*. In that case the insurance company brought a declaratory action to determine its liabilities to an insured under a policy. The insured requested attorney fees, but the request was denied by this court, which held that normally the insurance company could litigate its obligations with the insured without becoming liable for the insured's attorney fees. To hold otherwise would penalize the insurance companies. However, the present case is far different from the *Rocky Mountain* case. Here, the attorney fees were not for Van Dyke Trucking's suit against "Seven Provinces", but rather the fees were for a suit against Carolina Casualty to secure "other insurance". Furthermore, the insurance contract between Van Dyke Trucking and "Seven Provinces" expressly allows legal expenses for the Assured when he is suing to obtain "other insurance".

The judgment of the trial court is affirmed.

ROSELLINI, C. J., DONWORTH, WEAVER, and HAMILTON, JJ., concur.