[No. 13104-1-III. Division Three. November 22, 1994.]

PEREZ TRUCKING, INC., ET AL, *Appellants*, v. RYDER TRUCK RENTAL, INC., ET AL, *Respondents*.

*Craig H. Bennion* and *Cozen & O'Connor*, for appellants.

*Gregory J. Arpin* and *Chase, Hayes & Kalamon*, for respondents.

THOMPSON, C.J. — In this declaratory judgment action, the Superior Court determined that Ryder Truck Rental, Inc., and its insurer, Old Republic Insurance Company, had single liability limits of $100,000 on a tractor rented from Ryder by Perez Trucking, Inc. While being driven by a Perez employee, the tractor was involved in a collision with an automobile. The driver of the automobile sued Perez. Perez was insured by Rocky Mountain Fire & Casualty Company. The Superior Court determined that Old Republic and Rocky Mountain were obligated to pay losses resulting from the collision equally until the smaller policy issued by Old Republic was exhausted. Both insurers were to share defense costs equally until Old Republic paid its policy limits.

Perez and Rocky Mountain appeal the declaratory judgment. They contend Old Republic's insurance policy was primary and should have been reformed to provide $750,000 liability coverage based on Ryder's oral representations. They also contend Old Republic had a continued duty to defend Perez until settlement was reached or a judgment entered. We affirm in part and reverse in part.

## Facts

Perez is a common carrier with offices in Quincy. It hauls potatoes in trucks and tractor-trailers it owns and occasionally rents. At the time of the collision, the Washington Utilities and Transportation Commission (WUTC) required common carriers to carry liability insurance with limits of $750,000. In the late 1980's and in 1990, Perez carried $750,000 liability insurance on vehicles and trailers it owned.

In the late 1980's, Perez rented tractors from Ryder with which to pull its own trailers. Each time a tractor was rented, Perez obtained an insurance binder from Rocky Mountain, provided a copy to Ryder, and the rented tractor would be insured with liability limits of $750,000. However, because of the inconvenience of obtaining binders, Perez stopped renting from Ryder.

Sometime in the spring of 1990, the Spokane branch manager of Ryder, Steve Gebrowitz, paid Ricardo Perez a visit. He wanted to know why Perez was no longer renting from Ryder. Mr. Perez said he did not like the insurance hassles involved in renting. In response, Mr. Gebrowitz told him Ryder would provide liability insurance and eliminate those hassles.

Following the meeting between Mr. Perez and Mr. Gebrowitz, Perez again began renting tractors from Ryder. On October 21, 1990, Perez rented a tractor for the third time since the meeting. As with the two prior rentals, a Ryder rental agreement form was used. The form was completed by Spokane rental agent Darlene Ambrose. She understood Perez wanted to purchase liability insurance for the rental, but she did not discuss the amount of coverage with Mr. Perez. She highlighted the places on the agreement where Mr. Perez was to sign and gave the form to a Ryder employee. That employee delivered the agreement and the tractor to Perez.

Mr. Perez signed the agreement without reading it and initialed the section which stated "liability insurance limits

in paragraph 4" are provided by Ryder. Paragraph 4 on the reverse side stated that Ryder's insurer was providing liability limits of $100,000 per person and $300,000 per accident or the "state financial responsibility split limits, whichever are higher". The insurance was provided by Old Republic.

While the rented tractor was pulling a Perez-owned trailer, it collided with an automobile operated by Maria Valdespino. Ms. Valdespino sustained severe injuries and commenced a lawsuit against Perez for damages exceeding $100,000. Perez tendered the defense to Rocky Mountain and Ryder. Ryder rejected the defense; Rocky Mountain accepted. Perez and Rocky Mountain then commenced this declaratory judgment action.

### POLICY PROVISIONS

The Old Republic policy contains the following provision:

6. Other Insurance. The insurance afforded by this policy is primary insurance, *except when stated to apply in excess of or contingent upon the absence of other insurance.* When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

(Italics ours.)

The only "other insurance" clause which applied to the accident is contained in Old Republic's driverless auto endorsement.[1] It states:

It is agreed that such automobile liability insurance as is afforded by the policy, including the Exclusions and Conditions applicable thereto, for bodily injury liability and for property damage liability applies to any one or more persons or organizations leasing/renting an automobile from any named insured subject to the following provisions:

. . . .

3. The insurance coverage to such lessee/renter applies only to the maintenance or use of (1) the automobile so leased/rented and (2) trailers owned by the lessee/renter or for which he is

---

[1]The Old Republic policy contains another "other insurance" provision in a motor truck cargo endorsement. However, both parties agree that endorsement is inapplicable.

legally liable, but only while such trailers are physically attached to the leased/rented automobile, however, such insurance *shall not* apply if there is other coverage applicable to the trailer and available to the lessee/renter.

As previously noted, Perez owned the trailer which was being pulled by the rented tractor when the collision occurred. That trailer was insured through Rocky Mountain. The Rocky Mountain policy contains the following provision:

If the limits of other Insurance are enough to pay damages, none are payable under this policy.

If the limits of other insurance are not enough to pay the damages, this Insurance shall apply as excess. Excess means the other limits must be paid before this coverage is available.

## PRIMARY INSURANCE

Contentions. Ryder and Old Republic contend the "other insurance" clause in Old Republic's driverless auto endorsement is an "escape" clause applicable to both tractor and trailer. Since Perez had "excess" coverage on the trailer and such clause was repugnant to the escape clause, both clauses are unenforceable. *CC Housing Corp. v. Ryder Truck Rental, Inc.*, 106 N.M. 577, 581, 746 P.2d 1109, 1113 (1987). According to Ryder and Old Republic, this makes Old Republic and Rocky Mountain concurrent primary insurers obligated to pay losses based on the "maximum loss rule" and equally obligated to defend and pay defense costs.

Perez and Rocky Mountain contend the driverless auto endorsement in the Old Republic policy applies only to the trailer. Therefore, Old Republic's obligation is controlled by condition 6 which makes it the primary insurer of the tractor. Since a vehicle owner's insurance is primary, it does not matter which company was the primary insurer of the trailer. *Millers Cas. Ins. Co. v. Briggs*, 100 Wn.2d 9, 11-12, 665 P.2d 887 (1983); *Rasmussen v. Allstate Ins. Co.*, 45 Wn. App. 635, 639, 726 P.2d 1251 (1986), *review denied*, 107 Wn.2d 1031 (1987). Even if it did, an escape clause prevails over an excess clause and that makes Old Republic the primary insurer of the trailer as well as the tractor. Old Republic was therefore obligated to defend and pay defense

costs. There should have been no apportionment because Rocky Mountain's coverage was excess only.

 Old Republic's Policy on Tractor Is Primary. Old Republic's argument that paragraph 3 of its driverless auto endorsement constitutes an escape clause as to both tractor and trailer was rejected in *Contrans, Inc. v. Ryder Truck Rental, Inc.*, 836 F.2d 163 (3d Cir. 1987). At issue in *Contrans* was language in an Old Republic policy identical to that at issue here. *Contrans*, at 167, reasoned:

> As we read the policy, "such insurance" naturally refers only to subsection (2) — the insurance on the trailer. It is true that the beginning of the endorsement refers generally to the insurance coverage provided under the policy. However, the use of (1) and (2) creates a division in the flow of the sentence. There is nothing in the punctuation or choice of words (". . ., however, such insurance. . . .") that indicates to us a departure from the division that was created. Consequently, "such insurance" and the limitation which follows it refer back to the subject of subsection (2), namely the insurance on the trailer.

The Old Republic policy expressly states it is the primary insurer

> *except* when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.
>
> This provision does not make sense if the entire policy exists on a contingent basis . . .. In order for all of the policy to have meaning, "shall not apply" must modify only the coverage extended to the trailer.

*Contrans*, at 169.

We find the reasoning in *Contrans* persuasive. As the court explained, its interpretation of the endorsement is supported by several principles of grammatical and contractual interpretation (*e.g.*, the rule of the last antecedent and an ambiguity should be construed in favor of the insured). Further, if Ryder's and Old Republic's argument were accepted, Old Republic's policy would cover the insured wholly on a contingent basis; that is, there would be insurance on the

tractor only if the renter had no other insurance on the trailer. Such reading could not be reconciled with the "other insurance" clause in the body of the policy which describes the insurance provided therein as primary.

The driverless auto endorsement clause is not an "escape" clause as to the tractor. It evinces an intent only to avoid coverage *on a trailer* attached to a rented tractor when certain conditions are met. Since none of the limitations to excess or contingent coverage in the Old Republic policy apply to the tractor, paragraph 6 controls. By its terms, Old Republic's coverage on the tractor is primary.

■ **Rocky Mountain's Policy on Trailer Is Primary.** Unfortunately, our analysis cannot end with a determination that Old Republic's policy on the tractor was primary because the accident arose out of the use of both tractor and trailer. *See Blue Bird Body Co. v. Ryder Truck Rental, Inc.*, 583 F.2d 717, 726-27 (5th Cir. 1978). *Blue Bird* noted at page 726:

> [N]early every jurisdiction to face the question has held that an accident involving a tractor/trailer unit arises out of the use of both regardless of which part of the unit was actually involved in the accident.

(Citations omitted.) *See also Canal Ins. Co. v. State Auto. Ins. Ass'n*, 433 F.2d 373, 375 (5th Cir. 1970); *Hartford Accident & Indem. Co. v. Liberty Mut. Ins. Co.*, 277 So. 2d 775 (Fla. 1973).

Perez insured the trailers it owned through Rocky Mountain. Old Republic insured renter-owned trailers physically attached to rented tractors unless there was "other coverage" on the trailer. This clause is sometimes referred to as a "no-liability" or "escape" clause. Rocky Mountain contends its coverage did not constitute "other coverage" for purposes of Old Republic's escape clause because it was only "excess". It urges adoption of what it contends is a majority position — an escape clause fails when confronted by a standard "excess" clause. According to Rocky Mountain and Perez, that makes Old Republic's insurance on the trailer primary.

Ryder and Old Republic contend this court should adopt the "emerging rule". That is, escape and excess clauses are

mutually repugnant, cancel each other out, and the insurers are thereby concurrent primary insurers. Ryder and Old Republic contend Rocky Mountain's position represents a minority position referred to as the *Lamb-Weston*[2] doctrine.

We recognize what several courts, and the parties to this litigation, recognize. The decisions in this area of the law point in all directions and vary in both their approach and result. It is difficult, if not impossible, to determine which "rules" have achieved majority status, which are relegated to minority status, and which are still emerging. *See, e.g.,* C.C. Marvel, Annotation, *Apportionment of Liability Between Automobile Liability Insurers One or More of Whose Policies Provide Against any Liability if There Is Other Insurance,* 46 A.L.R.2d 1163 (1956) and cases cited therein; *Insurance Co. of N. Am. v. Continental Cas. Co.,* 575 F.2d 1070 (3d Cir. 1978); *Home Ins. Co. v. Certain Underwriters at Lloyd's London,* 729 F.2d 1132, 1135-36 (7th Cir. 1984); *Grasberger v. Liebert & Obert, Inc.,* 335 Pa. 491, 6 A.2d 925, 122 A.L.R. 1201 (1939); 7A Am. Jur. 2d *Automobile Insurance* § 435 (1980). According to 16 Ronald A. Anderson, *Couch on Insurance* § 62:76, at 541-42 (2d ed. rev. vol. 1983):

> Where the no-liability ["escape"] clause expressly provides that the insurance does not apply to any loss covered by other specified types of insurance, including the excess insurance type, it has been held that the insurer whose policy so provides is absolved from liability. But as a general trend, the courts are applying the rule that the more favorable clause will be enforced and the insurer who has the *no-liability* clause will be *primary to* the *excess* clause insurer.

(Footnotes omitted. Italics ours.)

Under the so-called *Lamb-Weston* doctrine, when competing policies contain a provision which attempts to limit or eliminate coverage because other insurance exists, both clauses are invalidated and liability is *prorated* between the insurers. *See also CC Housing Corp.,* at 579-80; *Werley v. United Servs. Auto. Ass'n,* 498 P.2d 112, 119 (Alaska 1972); *Sloviaczek v. Estate of Puckett,* 98 Idaho 371, 375, 565 P.2d

---

[2]*Lamb-Weston, Inc. v. Oregon Auto. Ins. Co.,* 219 Or. 110, 341 P.2d 110, 346 P.2d 643, 76 A.L.R.2d 485 (1959).

564 (1977). This rule has been criticized as an oversimplified way of arriving at an automatic result irrespective of factual, or legal, differences. 8A John A. Appleman & Jean Appleman, *Insurance* § 4906, at 344 (1981); *Sloviaczek*, at 376-77 (McFadden, C.J., dissenting). According to Appleman, if the terms of each insurance policy are unambiguous and not in conflict, finding escape and excess clauses mutually repugnant and therefore invalid is not warranted. 8A Appleman § 4910, at 477.

There are no reported Washington cases which have addressed the issue of whether or when an excess clause constitutes "other insurance" for purposes of an escape clause. At issue in *Miller v. Allstate Ins. Co.*, 66 Wn.2d 871, 876-77, 405 P.2d 712 (1965) was whether a pro rata clause constituted other "similar insurance" so as to effectuate an escape clause in the context of uninsured motorist coverage. Noting this area of law was "nebulous, unsettled and devoid of uniformity . . .", *Miller*, at 874 took the approach that the basic question was one of interpreting the insurance contract and analyzing the particular facts and circumstances before it. Using this approach, *Miller* held the pro rata clause constituted other similar insurance and the escape clause should be given effect. *Lamb-Weston* was distinguished; its reasoning was deemed not compelling.

We do not find application of an inflexible rule appropriate given the facts and circumstances of this case. The collision involved a tractor-trailer, a type of "combined vehicle". We find it significant that the driver's employer owned the trailer because the company issuing a policy to the owner of an involved vehicle is the primary insurer and liable to its policy limits without apportionment. *See Millers Cas. Ins. Co. v. Briggs*, 100 Wn.2d 9, 11-12, 665 P.2d 887 (1983) (involving two "excess" policies); *see also Rasmussen v. Allstate Ins. Co.*, 45 Wn. App. 635, 639, 726 P.2d 1251 (1986), *review denied*, 107 Wn.2d 1031 (1987).

All trailers owned by Perez were insured by Rocky Mountain. There were no exclusions from coverage when those trailers were being pulled by nonowned tractors. For pur-

poses of allocating liability, the Rocky Mountain policy is most accurately classified as a primary policy with an excess provision. As such, it constitutes "other insurance" for purposes of the policy issued by Old Republic. In so holding, we are not adopting an inflexible rule to be applied in all circumstances where an excess clause and an escape clause are at issue. It is simply the better rule to be applied under the somewhat unusual facts of this case.

Since the primary insurer of the tractor was Old Republic and the primary insurer of the trailer was Rocky Mountain, the companies were concurrent primary insurers. As concurrent primary insurers, losses relating to the Valdespino accident were properly apportioned between the two companies pursuant to the "maximum loss" rule. That is, each insurer was correctly ordered to "contribute equally until the limits of the smaller policy [are] exhausted, with any remaining portion of the loss then being paid from the larger policy up to its limits." *Mission Ins. Co. v. Allendale Mut. Ins. Co.*, 95 Wn.2d 464, 467, 626 P.2d 505 (1981) (quoting *Carriers Ins. Co. v. American Policyholders' Ins. Co.*, 404 A.2d 216, 221 (Me. 1979)).

### DUTY TO DEFEND

We turn next to the question of which insurer owed Perez a duty to defend and, as between the insurers, how defense costs are to be allocated.

The Old Republic policy requires that it defend the insured for covered losses. It also states that its duty ends after the applicable limits of the company's liability have been exhausted "by payment of judgments or settlements". The Rocky Mountain policy also requires that it defend any suit against its insured.

At the time the trial court ruled that Old Republic had no duty to defend once it tendered its policy limits, there had been no judgment or settlement in the Valdespino lawsuit. An insurer may not abandon its defense of a claim prior to settlement or judgment simply by paying its limits to the insured. *Viking Ins. Co. v. Hill*, 57 Wn. App. 341, 787 P.2d

1385 (1990). The court erred in ruling to the contrary. As concurrent primary insurers, both had the duty to defend and to share defense costs equally until judgment or settlement.

## POLICY LIMITS

Contentions. Perez contends the evidence at trial established mutual mistake and the right to reformation of the rental agreement to provide policy limits of $750,000, and findings to the contrary are not supported by substantial evidence. *Rocky Mt. Fire & Cas. Co. v. Rose*, 62 Wn. 2d 896, 385 P.2d 45, 1 A.L.R.3d 876 (1963). Mr. Perez also contends the evidence was sufficient to support reformation based on the negligent misrepresentations of Mr. Gebrowitz when he made the sales call on Mr. Perez. That evidence showed he knew Perez had $750,000 coverage when renting Ryder trucks in the past and one with special knowledge of material facts unknown to the other party has a duty to disclose them. *Tokarz v. Frontier Fed. Sav. & Loan Ass'n*, 33 Wn. App. 456, 656 P.2d 1089 (1982). A negligent misrepresentation is no less actionable merely because it may have been made through an honest mistake. *Liner v. Armstrong Homes of Bremerton, Inc.*, 19 Wn. App. 921, 579 P.2d 367 (1978).

Old Republic and Ryder contend a party seeking reformation must prove by clear, cogent and convincing evidence that the parties had an identical intention as to what terms were to be embodied in the contract. *Rocky Mt. Fire & Cas. Co. v. Rose, supra.* Questions of intent are factual matters for the trial court. In questioning Ms. Ambrose about what she thought or intended the limits to be, Plaintiffs counsel improperly equated the state financial split limits with the state insurance requirements for truckers like Perez. The trial court's finding that there was no mutual intention is supported by the evidence and should not be reversed on appeal.

Old Republic and Ryder also contend the evidence supports the finding that Mr. Gebrowitz did not negligently misrepresent the amount of liability coverage. In a negligent misrepresentation claim, one who holds himself out as hav-

ing skill and knowledge in a particular area is liable to another if the other is damaged because he is provided inaccurate information, but only if he justifiably relies on it. *Rogers v. Toppenish*, 23 Wn. App. 554, 557, 596 P.2d 1096, *review denied*, 92 Wn.2d 1030 (1979).

Reformation Based on Mutual Mistake. If, at the time of a transaction, the intention of the parties is identical, but the written agreement does not express that intention, a mutual mistake has occurred and there are grounds for reformation of the agreement. *Rocky Mt. Fire & Cas. Co. v. Rose, supra* at 902.

The trial court found the intentions of Mr. Gebrowitz and Mr. Perez were not identical. Finding of fact 6 states in relevant part:

> While Mr. Perez, in his own mind, may have thought any insurance coverage obtained through Ryder would be $750,000, in the conversation between Mr. Perez and Mr. Gebrowitz, the court finds there was no specific assurance given by Mr. Gebrowitz to Mr. Perez that the coverage provided by Ryder would be in the amount of $750,000. Accordingly, there was no meeting of the minds between Mr. Perez and Mr. Gebrowitz that Ryder would provide liability insurance coverage in the amount of $750,000.

The trial court's finding is supported by the testimony of Mr. Perez and Mr. Gebrowitz. A finding will not be disturbed on appeal if supported by substantial evidence. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

As to Ms. Ambrose, finding of fact 8 states in relevant part:

> Ms. Ambrose understood that Perez Trucking wished to purchase liability insurance for the rental, but there was no discussion between her and Mr. Perez as to the amount of coverage Mr. Perez wanted. Ms. Ambrose assumed it was the amount offered in the rental agreement in paragraph 4, $100,000 per person and $300,000 per accident. Ms. Ambrose did not intend to provide $750,000 liability insurance coverage to Perez Trucking.

Ms. Ambrose testified that at the time she completed the rental agreement for Perez, she was aware of insurance

limits required by law. She was not sure then what they were; she thought they were $500,000. She also stated she did not discuss limits with Mr. Perez and knew she would have needed permission from Ryder's Seattle office to increase limits over those provided in the rental form. She did not contact the Seattle office to increase limits. Although finding of fact 8 is not supported by substantial evidence in its entirety, there was insufficient evidence of Ryder's intention to provide $750,000 liability insurance limits.

■ Reformation Based on Negligent Misrepresentation. The trial court found Mr. Gebrowitz gave "no specific assurance . . . to Mr. Perez that the coverage provided by Ryder would be in the amount of $750,000". That finding is supported by the evidence. Even if it were not, there is insufficient evidence to show that Perez justifiably relied on that representation. *Rogers*, at 557. The rental agreements signed by Perez on three occasions supplied the correct information. Any reliance on Mr. Gebrowitz' representation would have been unjustified.

### CONCLUSION

We affirm the trial court's determination that Old Republic had single liability limits of $100,000 on the tractor rented by Perez. We also affirm the determination that Old Republic and Rocky Mountain were obligated to pay losses equally until Old Republic's policy limits were exhausted. We reverse the determination that Old Republic's duty to defend and share defense costs equally ended when Old Republic paid its policy limits. Its duty to defend and share equally in the defense costs continued until judgment or settlement.

MUNSON and SCHULTHEIS, JJ., concur.