BONNIE OWEN REALTY, INC., d/b/a Bonnie Owen Property Management, Plaintiff-Appellee, v. CINCINNATI INSURANCE COMPANY, Defendant and Counterdefendant-Appellant (Gergana Zlateva *et al.*, Counterplaintiffs-Appellees).

Fifth District   No. 5—95—0663

Opinion filed September 24, 1996.

Evan H. Johnson and Bradley T. Paisley, both of Erickson, Davis, Murphy, Johnson, Griffith & Walsh, Ltd., of Decatur, for appellant.

Feirich/Mager/Green/Ryan, of Carbondale, for appellee Bonnie Owen Realty, Inc.

G. Patrick Murphy, of Marion, for appellee Masako Toyota Shin.

Robert H. Howerton, of Harris, Lambert, Howerton & Dorris, of Marion, for appellee Sylvia Camacho.

JUSTICE WELCH delivered the opinion of the court:

This case is a declaratory judgment action brought by Bonnie Realty, Inc., d/b/a Bonnie Owen Property Management (plaintiff), against the Cincinnati Insurance Company (defendant) to determine whether the two insurance policies issued by defendant to plaintiff provide coverage for claims filed against plaintiff. On July 24, 1995, the circuit court of Jackson County entered summary judgment for plaintiff, finding that the policies do provide coverage. Defendant appeals.

On December 6, 1992, a tragic fire occurred at an apartment building managed by plaintiff. Several people lost their lives in the fire, and numerous others suffered injury. Some of these victims filed suit against plaintiff, alleging negligence in failing to provide proper security at the apartment building and allowing someone to enter the premises and start the fire, in failing to provide a sufficient number of proper and working smoke alarms, in failing to provide and maintain proper fire-extinguishing devices, in failing to properly equip the property with fire escapes, in failing to provide proper fire walls, in failing to properly maintain the electrical wiring, and in failing to warn of the hazards associated with the property. Plaintiff tendered the defense of the lawsuits to defendant, which denied coverage based on the following exclusions found in the two policies of insurance:

> "This insurance does not apply to 'bodily injury' or 'property damage' arising out of:
>
> The rendering or failure to render professional services if such injury or damage arises out of any claim for Professional Liability or Malpractice made against an insured caused by any negligent act, error, or omission of an insured or any other person for whose acts you are legally responsible in the conduct of any business, trade, or profession"; and
>
> "It is agreed that such insurance as is provided by the policy for bodily injury, personal injury, or property damage does not apply if such injury or damage arises out of any claim for Professional Liability or Malpractice made against an insured caused by any negligent act, error, or omission of an insured or any other person for whose acts an insured is legally liable in the conduct of any business, trade, profession, municipal service, such as, but not limited to, law enforcement departments, fire departments (including volunteers), health departments, ambulance services, paramedics, lawyers, or judges."

On plaintiff's motion for summary judgment, the circuit court found (1) that the exclusions in the policies of insurance do not apply to the facts of this case and (2) that defendant is estopped to deny coverage. The trial court found that defendant has a duty to defend plaintiff under both policies and that defendant is obligated to indemnify plaintiff under each of the policies in the event that judgment is rendered against plaintiff in the underlying suits. On August 1, 1995, the court entered summary judgment against defendant and in favor of plaintiff and ordered that plaintiff shall recover from defendant its attorney fees incurred in prosecuting the declaratory judgment action.

■ In an appeal from a grant of summary judgment, a reviewing court conducts a *de novo* review. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 390 (1993). The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court that are appropriate subjects for disposition by summary judgment. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391.

■ Defendant's first issue on appeal is whether the trial court erred in holding that defendant has a duty to defend plaintiff in the underlying lawsuits. In determining whether an insurer has a duty to defend its insured, the court must look to the allegations of the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 393. The allegations in the underlying complaint must be liberally construed in favor of the insured. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 125 (1992). If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage provisions, then the insurer has a duty to defend the insured in the underlying action. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 393. A refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage. *Outboard Marine Corp.*, 154 Ill. 2d at 108. Unless the complaint on its face clearly alleges facts which, if true, would exclude coverage, the potentiality of coverage is present and the insurer has a duty to defend. *Western Casualty & Surety Co. v. Adams County*, 179 Ill. App. 3d 752, 756 (1989). Any doubts about coverage are to be resolved in the insured's favor. *Western Casualty & Surety Co.*, 179 Ill. App. 3d at 757.

Defendant argues that the exclusions in the insurance policies for "professional services" bar coverage. Those exclusions talk about "professional liability" or "malpractice" in "any business, trade or

profession" and claims for "professional liability" or "malpractice" in "the conduct of any business, trade, profession or municipal service." Defendant argues that plaintiff was engaged in the business or profession of property management and that the underlying complaints allege negligence in the provision of professional services in the conduct of this profession or business.

■ In *State Street Bank & Trust Co. v. INA Insurance Co.*, 207 Ill. App. 3d 961 (1991), this court discussed the definition of the term "professional service" within the context of an insurance policy exclusion. We held that the term is not limited to services performed by persons who must be licensed by a governmental authority in order to practice their professions but refers to any business activity conducted by the insured which involves specialized knowledge, labor, or skill and is predominantly mental or intellectual as opposed to physical or manual in nature. *State Street Bank & Trust Co.*, 207 Ill. App. 3d at 967. We also held that the exercise of business judgment in conducting banking services fell within the "professional service" exclusion of the insurance policy. *State Street Bank & Trust Co.*, 207 Ill. App. 3d at 967-68.

This definition of "professional services" apparently derives from Black's Law Dictionary, which defines "profession" as a "vocation or occupation requiring special, usually advanced, education, knowledge, and skill; *** [t]he labor and skill involved in a profession is predominantly mental or intellectual, rather than physical or manual." Black's Law Dictionary 1210 (6th ed. 1990).

■ We agree with the trial court that the allegations in the underlying complaints do not allege the conduct by plaintiff of "professional services." The complaints allege simple negligence by plaintiff in the maintenance of the building. None of the allegations of negligence involve any specialized knowledge, labor, or skill, nor do they involve conduct that is predominantly mental or intellectual as opposed to physical or manual in nature.

We note that the exclusions in the insurance policy do not apply to *all* negligence in the conduct of plaintiff's business, but only to negligence based on the rendering or failure to render professional services or out of any claim for professional liability or malpractice. We conclude that the allegations of negligence in the complaints do not involve "professional services," "professional liability," or "malpractice," although they certainly involve the conduct of plaintiff's business, which is property management. Because the insurer, as drafter of the policy, could have stated exclusions clearly and specifically, exclusionary provisions are applied only where the terms are clear, definite and explicit. *State Farm Fire & Casualty Co. v. Moore,*

103 Ill. App. 3d 250, 256 (1981). We state again that any doubt as to coverage must be resolved in favor of the insured. *Bituminous Casualty Corp. v. Fulkerson*, 212 Ill. App. 3d 556, 564 (1991).

Here, defendant could have drafted the exclusion to include all claims arising from the negligence of plaintiff in the conduct of her business, be they simple negligence or professional negligence. Defendant did not do so; it excluded only claims arising from plaintiff's professional negligence or malpractice. The allegations of negligence in the underlying complaints do not involve professional services or malpractice. Accordingly, the policies of insurance at least potentially provide coverage for plaintiff, and defendant has a duty to defend plaintiff in the underlying suits. The trial court did not err in so finding.

In light of our finding that defendant has a duty to defend plaintiff against the claims brought against it, we find it unnecessary to address the issue of whether the trial court erred in holding that defendant is estopped from asserting the professional services exclusions as a defense to coverage.

Next, defendant argues that the trial court erred in declaring that it has a duty not only to defend plaintiff in the underlying suits but also to indemnify plaintiff for the amount of any judgment or settlement in the underlying suits. Defendant argues that the issue of its duty to indemnify is not ripe for adjudication because the duty to indemnify arises only when an insured becomes legally obligated to pay damages in the underlying action.

■ Unlike the duty to defend, the duty to indemnify cannot be determined simply on the basis of whether the factual allegations of the underlying complaint potentially state a claim against the insurer. *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 203 (1991). Defendant is correct that the duty to indemnify arises only when the insured becomes legally obligated to pay damages in the underlying action. *Waste Management, Inc.*, 144 Ill. 2d at 203-04. Accordingly, it has been held that a declaratory judgment action to determine an insurer's duty to indemnify its insured, brought prior to a determination of the insured's liability, is premature since the question to be determined is not ripe for adjudication. *Bituminous Casualty Corp.*, 212 Ill. App. 3d at 561.

Our supreme court has carved out an exception to this rule for declaratory judgment actions brought to determine insurance coverage where the issues involved in the declaratory judgment action are separable from those in the underlying action. *Fulkerson*, 212 Ill. App. 3d at 561; *Maryland Casualty Co. v. Chicago & North Western Transportation Co.*, 126 Ill. App. 3d 150, 156-57 (1984). The primary

concern is that an untimely determination in the declaratory judgment action could subsequently prejudice a party in the underlying action through application of collateral estoppel. *Maryland Casualty Co.*, 126 Ill. App. 3d at 157. Therefore, the court in the declaratory judgment action must not determine the ultimate question of the insured's liability or the facts upon which such liability is based. *State Farm Fire & Casualty Co. v. Moore*, 103 Ill. App. 3d 250, 257 (1981).

■ We agree with the trial court that the issues involved in the instant declaratory judgment action are separable from those in the underlying suits. The only issue in the declaratory judgment action is whether the negligence of plaintiff, if any, constitutes professional negligence or malpractice. The answer to this question cannot impact in any way on the underlying actions and cannot prejudice any party thereto. Nor could circumstances arise in the trial of the underlying actions which would, through collateral estoppel, prevent defendant from raising a defense to indemnification in the underlying actions. Accordingly, the trial court did not err in finding that defendant has a duty to indemnify plaintiff up to the policy limits in the event judgment is entered against it in the underlying suits.

■ Defendant next argues that the trial court erred in failing to admit and consider extrinsic evidence to show that plaintiff knew that claims of professional negligence in the management of property would not be covered by the policies. Defendant attempted to present evidence that plaintiff had been told by defendant's agent that claims of professional negligence would not be covered by the policies and that plaintiff was in fact, at the time the fire occurred, in the process of applying for and obtaining professional liability coverage. Defendant further argues that the trial court erred in denying its motion to compel Bonnie Owen's deposition, which would have further established the aforementioned facts.

In light of our holding that the acts of negligence alleged in the underlying complaints did not constitute professional negligence, we find that any claimed error in the trial court's ruling with respect to this extrinsic evidence is harmless. Evidence that the parties understood that the insurance policies did not cover professional negligence simply is not relevant unless the underlying lawsuits allege professional negligence, and these do not.

Furthermore, the only question presented in the declaratory judgment action is one of contract construction. There were no factual issues for the trial court to decide, but only the question of law as to contract construction. The extrinsic evidence defendant sought to introduce went to the question of contract construction. De-

fendant argued in the trial court that the exclusionary language in the insurance policies is not ambiguous. With this we agree. An insurance policy in which no ambiguity appears is to be read as any other contract, that is, according to the plain and ordinary meaning of its terms. *Dora Township v. Indiana Insurance Co.*, 78 Ill. 2d 376 (1980). When there is no ambiguity in the policy, any evidence beyond the four corners of the policy should not be considered. *Central Illinois Public Service Co. v. Allianz Underwriters Insurance Co.*, 240 Ill. App. 3d 598, 603 (1992). When contract terms are clear and unambiguous, they must be given their ordinary and natural meaning, and no parol or extrinsic evidence may be considered to vary the meaning of the terms. *Susmano v. Associated Internists of Chicago, Ltd.*, 97 Ill. App. 3d 215, 219 (1981). The trial court did not err either in refusing to admit and consider defendant's extrinsic evidence or in failing to grant defendant's motion to compel the deposition of Bonnie Owen.

■ Defendant next argues that the trial court erred in awarding plaintiff its attorney fees incurred in presenting the declaratory judgment action. On this point, we agree with defendant.

It has long been the rule in Illinois that a successful party in a lawsuit is not entitled to attorney fees absent a statute or agreement. *Kerns v. Engelke*, 76 Ill. 2d 154 (1979). Thus, a long line of cases has held that, in the absence of vexatious behavior by the insurer (in which case an award of attorney fees is allowed by statute), an insured may not recover attorney fees incurred in bringing a declaratory judgment action against the insurer to establish coverage. See *Waitzman v. Classic Syndicate, Inc.*, 271 Ill. App. 3d 246, 256 (1995).

As the parties point out, in *Trovillion v. United States Fidelity & Guaranty Co.*, 130 Ill. App. 3d 694, 700-01 (1985), this court did award an insured attorney fees incurred in bringing a declaratory judgment action against its insurer to establish coverage, stating, "The measure of damages for [breach of the duty to defend] is the amount of the judgment against the insured plus any expenses incurred." We now hold that, to the extent *Trovillion* appears in conflict with prior and subsequent case law on this issue, we hereby abandon it.

Plaintiff argues that defendant's behavior in the instant case was vexatious and that it is therefore entitled to attorney fees pursuant to statute. 215 ILCS 5/155 (West 1992). We note that the trial court made no finding that defendant had behaved vexatiously. Further, we find no basis on which to presume that the trial court made an implicit finding of vexatiousness, particularly in view of the fact that the plaintiff did not even raise in its pleadings or in its contentions to the trial judge the possibility of vexatious behavior. See *International*

*Insurance Co. v. City of Chicago Heights*, 268 Ill. App. 3d 289, 302 (1994). Accordingly, we reverse the trial court's award of attorney fees to plaintiff.

■ The final issue raised by defendant on appeal is whether the trial court erred in denying its motion for substitution of judge filed pursuant to section 2—1001(a)(2) of the Illinois Code of Civil Procedure, which provides for substitution as of right if the motion is made before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case. 735 ILCS 5/2—1001(a)(2) (West 1992). We find that at the time defendant presented its motion for substitution of judge, the trial judge had already ruled on a substantial issue in the case. Accordingly, the trial court did not err in denying defendant's motion for substitution.

Prior to presenting its motion for substitution, defendant filed a motion to compel the deposition of Bonnie Owen. In denying this motion to compel, the trial court held that whether the insurer has a duty to defend must be determined solely from the language of the underlying complaint and the insurance policy. This ruling by the trial court was a clear indication of its opinion that extrinsic evidence would not be admissible for the purpose of determining whether defendant had a duty to defend plaintiff under the policies of insurance. It was only after this ruling that defendant filed its motion to substitute judges. Indeed, the trial court subsequently ruled that extrinsic evidence would not be admissible for purposes of construing the insurance policies or determining whether defendant had a duty to defend plaintiff.

Rulings are considered "substantial" when they are directly related to the merits of the case. *In re Marriage of Talty*, 252 Ill. App. 3d 80, 82 (1993), *rev'd on other grounds*, 166 Ill. 2d 232, 652 N.E.2d 330 (1995). A motion to substitute judges is untimely if brought after the judge has ruled on a substantial issue in the case. *Talty*, 252 Ill. App. 3d at 82. The purpose behind this rule is to preclude a litigant's attempt to "judge shop" after forming an opinion that the judge may be unfavorably disposed toward the litigant's cause. *Talty*, 252 Ill. App. 3d at 82. The trial court's ruling that it would not compel the discovery deposition of Bonnie Owen clearly foreshadowed its subsequent ruling that extrinsic evidence would not be allowed to determine defendant's duty to defend. It certainly allowed defendant to form an opinion that the judge may be unfavorably disposed to its cause.

Relying on *Delta Oil Co. v. Arnold*, 66 Ill. App. 3d 375 (1978), and *In re Marriage of Birt*, 157 Ill. App. 3d 363 (1987), defendant argues that this court has held that, as a matter of law, rulings on discovery

motions may never be rulings on substantial issues. Defendant misunderstands the holdings of these cases.

In *Arnold*, the court held that the rulings relating to discovery "were tangential to the merits of the case" and therefore did not constitute rulings on substantial issues in the case. *Arnold*, 66 Ill. App. 3d at 380. The court stated that, "under the facts of the present case, it is obvious that these issues were not of substantial importance to the merits of this case." *Arnold*, 66 Ill. App. 3d at 380. Clearly, the court in *Arnold* did not rule as a matter of law that rulings on discovery motions can never constitute rulings on substantial issues, but it limited its decision to the facts of the case before it.

In *Birt*, the court again held that the discovery motions ruled on by the trial judge were not related to the merits of the case and those rulings were not on substantial issues in the case. *Birt*, 157 Ill. App. 3d at 368-69. *Birt* did not hold as a matter of law that rulings on discovery motions could never constitute rulings on substantial issues.

Indeed, in *Kochan v. Owens-Corning Fiberglass Corp.*, 242 Ill. App. 3d 781, 793 (1993), this court held that a trial court's ruling on discovery motions was a ruling on a substantial issue because it was more than merely administrative or ministerial but pertained to evidentiary matters at trial and revealed the judge's interpretation of a supreme court rule. The instant case is similar. The trial court's ruling on the motion to compel Bonnie Owen's deposition pertained to evidentiary matters at trial and revealed the judge's opinion as to the admissibility of extrinsic evidence. Accordingly, it constituted a ruling on a substantial issue in the case, and the trial court did not err in denying defendant's motion for substitution of judge.

For the foregoing reasons, the judgment of the circuit court of Jackson County is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

KUEHN and CHAPMAN, JJ., concur.